# EXHIBIT 4

# IN THE SUPREME COURT
## STATE OF CALIFORNIA

In the matter of:

    RIZALINO CAYABO,

on Petition for Review.

_____/

CASE NO. _____
(Court of Appeal No. _F052050_
Fifth Appellate District;
Superior Court No. VHC174532
Tulare County)

# PETITION FOR REVIEW

After Decision of the Court of Appeal, Fifth Appellate District
Denying the Petition for Writ of Habeas Corpus on _June 1, 2007_

Rizalino Cayabo, D-09912
Correctional Training Facility
P.O. Box 705
Soledad, CA 93960

Petitioner in pro per

IN THE SUPREME COURT

STATE OF CALIFORNIA

In the matter of:

RIZALINO CAYABO,

on Petition for Review.

_____/

CASE NO. _____
(Court of Appeal No. F052050
Fifth Appellate District;
Superior Court No. VHC174532
Tulare County)

TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT AND
THE ASSOCIATE JUSTICES OF THE COURT:

COMES NOW Rizalino Cayabo (hereafter Petitioner) respectfully
requesting review of the decision of the Court of Appeals, Fifth
Appellate District, filed on January 19, 2007 (ATTACHMENT A).

This case presents the following questions for review:

1.  IN LIGHT OF THE UNITED STATES SUPREME COURT DECISION IN
    HAMDI v. RUMSFELD (2004) 542 U.S. 507 HOLDING THE "SOME
    EVIDENCE" STANDARD OF SUPERINTENDENT v. HILL (1985) 472
    U.S. 455 IS A STANDARD OF REVIEW NOT A STANDARD OF
    PROOF IS THE "SOME EVIDENCE" OF PROOF ARTICULATED IN IN
    RE ROSENKRANTZ (2002) 29 CAL.4th 616 CONTRARY TO CLEARLY
    ESTABLISHED UNITED STATES SUPREME COURT LAW?

2.  WAS THE GOVERNOR'S DECISION ARBITRARY AND IN VIOLATION
    OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE
    FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
    CONSTITUTION WHEN THE GOVERNOR REVERSED PETITIONER'S
    GRANT OF PAROLE SOLELY ON THE COMMITMENT OFFENSE OVER
    TWO DECADES OLD WHEN THERE IS NOT A SCINTILLA OF
    EVIDENCE THAT HE IS A CURRENT THREAT TO PUBLIC SAFETY?

3.  WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
    AND TO BE FREE FROM DOUBLE JEOPARDY GUARANTEED BY THE
    FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
    CONSTITUTION WHEN THE BOARD OF PAROLE HEARINGS ENHANCED
    PETITIONER'S TERM FOR A FIREARM ENHANCEMENT THAT HE
    SERVED CONSECUTIVELY TO THE LIFE SENTENCE?

- 1 -

## II

### NECESSITY FOR REVIEW

This Petition for Review should be granted because question one is a case of first impression of statewide importance in which the Court did not have the benefit of the 2004 United States Supreme Court decision when deciding the "some evidence" standard as a standard of proof in In re Rosenkrantz (2002) 29 Cal.4th 616; question two needs to be addressed to bring lower state courts into uniformity in reviewing decisions of unsuitability by the Board of Parole Hearings (hereafter Board) as case at bench is no more egregious than many writs that have been granted by state appellate courts with less passage of time, the lower state court decisions being as arbitrary as the Board's decisions. For parole decisions to be fair and uniform, they must be consistent, applying and weighing the suitability criteria fairly, without personal predilections based on political safety and not public safety. Questions three needs to be answered because the Board consistently applies enhancements to add time to the term when the enhancement has already been served separately.

## III

### JURISDICTION OF THE COURT

This Court has sole jurisdiction to render opinions on questions of statewide interest (Cal. Rules of Court, Rule 29(a)(1)). Moreover, only this Court can overturn one of its own decisions, and the "some evidence" standard is a question this Court should answer.

## IV

### HISTORY OF THE CASE

- 2 -

The facts of the case are found in the writ of habeas corpus,
pages 5-10 that is part of the record and incorporated herein by
reference. In short.

On October 4, 1984, Petitioner murdered his brother-in-law,
Medaro Lozano. After committing the offense, Petitioner drove to
a Tulare County Sheriff's Office and turned himself in. After a
trial by judge, being found guilty of second degree murder in
violation of Penal Code§187 and personal use of a firearm in violation
of Penal Code § 12022.5, on July 1, 1985, Petitioner was sentenced
to an indeterminate sentence of 15 years to life pursuant to Penal
Code § 190, and two years for the use of a firearm, to run consecutive
to the 15 years to life.

Petitioner murdered his brother-in-law because he felt his
brother-in-law "had betrayed him and violated Filipino custom, by
not asking his permission to marry, Cayabo's sister" (see EXHIBIT
1, p. 4, to habeas petition). It had been a year and the brother-
in-law had not apologized, but rather rubbed it in Petitioner's face.
On the night of the murder, over 22 years ago, Petitioner drove to
his friends house, but when he pulled up his brother-in-law was there,
so he left. Petitioner drove around for about an hour and had a
few drinks of alcohol. Petitioner returned to his friends, exited
his car, walked up behind his brother-in-law and shot him in the
head.

Under mitigating circumstances in the POR, the Probation Officer
concluded, "The crime was committed due to unusual circumstances,
which is unlikely to recur" (EXHIBIT 1, p. 5). A psychological
evaluation prepared for sentencing by Dr. Jose Icasiano, an expert

- 3 -

in Filipino culture (EXHIBIT 2 to habeas petition) explained how Filipino customs motivated Petitioner.

Petitioner's postconviction record is exemplary, with several psychological evaluations by forensic experts, and evaluations by correctional experts, all agreeing Petitioner is not a current threat to public safety, twenty-two years after the commitment offense and over a half dozen parole hearings, on May 9, 2006, in a twenty page decision detailing its findings, the Board found Petitioner suitable for parole. The decision passed the close scrutiny of the Decision Review Unit, thus two independent bodies found Petitioner is not a current threat to public safety.

On September 28, 2006, the Governor reversed the Board's decision (EXHIBIT 5), doing so on the ground that the "offense was especially heinous because his stated motive for the crime -- that he felt angry and betrayed because Mr. Lozano did not ask permission to marry his sister -- is very trivial in relation to the magnitude of the brutal murder he committed." Additionally, "there is also evidence in the record before me that the murder involved some level of premeditation." The Governor also considered the Tulare County District Attorney's statement and the statement of the Tulare County Sheriff's Office, neither of which added any new information or stated why Petitioner is a current threat to public safety.

The lower court decision does nothing to help the Governor's decision in explaining how, twenty-two years after the fact, with no prior history of violence and no postconviction history of violence, the instant offense being an isolated incident of aberrant behavior in Petitioner's life, makes him a current threat to public

- 4 -

safety when Petitioner has surpassed the maximum term for second
degree murder and if had been convicted of first degree murder has
surpassed the minimum eligible parole release date for first degree
murder over 5 years ago, the lower court decision being unreasonable
in light of the facts.  In fact, the lower court relied on In re
Elkins (2006) 44 Cal.App.4th 475 to deny the writ.  In Elkins, the
court explained, although parole may be denied on the offense alone,
over time the offense loses all value of predictability, thus coming
to a different conclusion than the court in case at bench; the court
doing nothing more than regurgitating the Governor's ip so facto
rationale, making absolutely no nexus between the commitment offense
and current threat to public safety.

## V.

## ARGUMENTS

1.  IN LIGHT OF THE UNITED STATES SUPREME COURT DECISION IN
    HAMDI v. RUMSFELD (2004) 542 U.S. 507 HOLDING THE "SOME
    EVIDENCE" STANDARD OF SUPERINTENDENT v. HILL (1985) 472
    U.S. 455 IS A STANDARD OF REVIEW NOT A STANDARD OF
    PROOF IS THE "SOME EVIDENCE" OF PROOF ARTICULATED IN IN
    RE ROSENKRANTZ (2002) 29 CAL.4th 616 CONTRARY TO CLEARLY
    ESTABLISHED UNITED STATES SUPREME COURT LAW?

In 2002 this Court, citing In re Powell (1988) 45 Cal.3d 894,
904, which relied on Superintendent v. Hill (hereafter Hill), supra,
472 U.S. 445, held in In re Rosenkrantz, supra, 29 Cal.4th 616, at
656 that due process requires that the Governor's decision to reverse
a finding of suitability by the Board need be supported only by "some
evidence." The "some evidence" standard being the standard of proof.
Petitioner asks, logically, if the standard of proof is "some
evidence," and the standard of review is "some evidence," how then

does the "some evidence" standard apply itself?

Hill, supra, was ambiguous as to when the "some evidence" standard applied, at the administrative decision level, or upon judicial review? That ambiguity was clarified in the recent decision of Hamdi v. Rumsfeld, supra, 542 U.S. 507, 124 S.Ct. 2633, at 2651, the High Court holding that the "'[some evidence]' standard therefore ill suited to the situation in which a habeas petitioner has received no prior proceedings before any tribunal and had no prior opportunity to rebut the Executive's factual assertions before a neutral decisionmaker." The Governor is not a "neutral decisionmaker." That was recognized by the dissenters in Dannenberg, opining, the Governor has "little to gain and potentially much to lose by granting parole, and accordingly, the incentive to give only pro forma consideration to parole decisions is strong" (In re Dannenberg (2005) 34 Cal.4th 1061, 1105; see also In re Scott II (2005) 133 Cal.App.4th 573, 594 fn. 7 ["it appears that gubernatorial reversals of Board decisions granting parole are most often based solely or primarily on the gravity of the inmate's offense"]).

The standard of proof is "a preponderance of the evidence" (California Code of Regulations, Title 15 (hereafter Cal. Code Regs., tit. 15) § 2000(b)(50)). The standard of review, that is assuming the standard of proof was correctly applied, is then "some evidence" (Hamdi v. Rumsfeld, supra, 124 S.Ct., at 2651).

Any evidence, however, that lacks any real probative value cannot constitute "some evidence." Recently opined in In re Lee (2006) 143 Cal.App.4th 1400, 2006 DJDAR 13961, 13963, c.1 (DJDAR 10/19/06):

"The test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release

unreasonably endangers public safety. (Cal. Code Regs. tit. 15, § 2402, subd. (a) [parole denied if prisoner 'will pose an unreasonable risk or danger to society if released from prison'], see e.g. In re Scott (2005) 133 Cal.App.4th 573, 595 ['The commitment offense can negate suitability [for parole] only if circumstances of the crime...rationally indicate that the offender will present an unreasonable public safety risk if released from prison'], but see In re Lowe (2005) 130 Cal.App.4th 1405 [suggested 'some evidence' applies to the factors, not dangerousness].) Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." (Emphasis in original.)

Moreover, it is simply irrational and decimates the law and any sense of fair play once a defendant is acquitted of first degree murder, which requires a finding beyond a reasonable doubt, for the Executive to be able to recharacterize the offense and find "premeditation" on a mere modicum of evidence, the evidence being no more than "Because I say so," violating Blakely v. Washington (2004) 542 U.S. ___, 124 S.Ct. 2531; Apprendi v. New Jersey (2000) 530 U.S. 466 [elements of offense must be found by a jury beyond a reasonable doubt]. Petitioner was tried before a competent judge acquitting him of first degree murder. The Governor cannot now, because he did not agree with the outcome, find elements of first degree murder to deny Petitioner parole.

Whether by "a preponderance of the evidence" or "some evidence," the Governor's decision was arbitrary, being unsupported by any evidence Petitioner is a current threat to public safety.

2. WAS THE GOVERNOR'S DECISION ARBITRARY AND IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE GOVERNOR REVERSED PETITIONER'S GRANT OF PAROLE SOLELY ON THE COMMITMENT OFFENSE OVER TWO DECADES OLD WHEN THERE IS NOT A SCINTILLA OF EVIDENCE THAT HE IS A CURRENT THREAT TO PUBLIC SAFETY?

While it is true the commitment offense must be initially considered and weighed by the Board/Governor, it is just as true

- 7 -

that the offense is not to be viewed in a vacuum as though it occurred only yesterday, but is to be placed into perspective relative to time, "entailing primarily what a man is and what he may become rather than simply what he has done" (Greenholtz v. Inmates of Nebraska Correctional and Penal Complex (1979) 442 U.S. 1, 10). And, although the commitment offense is a consideration in any particular case, "[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release (Id., at 15; In re Minnis (1972) 7 Cal.3d 639, 645 [in prison conduct and potential for rehabilitation are of "paramount importance"). Thus, "[p]arole decisions are based in large measure on occurrences subsequent to the commission of the offense" (In re Rodriguez (1975) 14 Cal.3d 639, 652). As it was observed in In re Andrade (2006) 141 Cal.App.4th 807, 823, Pollak J., dissenting, "This record, like that in numerous recent cases, strongly suggests that California parole authorities are losing sight of that fact."

One appellate court put it thusly: "The state now places greater importance on punishment as the purpose of imprisonment. (Pen. Code, § 1170, subd. (a)(1))" (In re Morrall (2002) 102 Cal.App.4th 280, 292). The court continued, "With respect to person sentenced to indeterminate terms, the purpose of punishment is satisfied by requirement of service of a minimum period before eligibility for parole and, when suitable for parole, by the determination a release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public" (Id.; see also Sanchez v. Kane (C.D. Cal. 2006) 444 F.Supp.2d

1049, 1062-1063 ["if the Governor's decision to deny parole based on the nature of the offense is permitted to stand, contrary to the parole statutes which logically measures parole eligibility on the reformation of the prisoner after a prescribed period of punishment, parole eligibility is an impossibility, not a possibility. The parole statutes do not vest the Governor with the power to resentence petitioner"]).

Assuming, however, the Governor can retry the case and make an independent finding of "premeditation," the question now becomes is the offense "particularly egregious" for a first degree murder? It is one matter if the murder "was particularly egregious for a second degree murder; it is another matter whether any evidence would support the same conclusion for a first degree murder" (In re Rosenkrantz, supra, 29 Cal.4th, at 679; concurring, Moreno, J.). If Petitioner had been convicted of first degree murder he would have been eligible for parole     six years ago.  As it stands, with conduct credits (Penal Code § 190; Cal. Code Regs., tit. 15, § 2410), he has the equivalent of 28 years invested in his sentence, the mid-range for first degree murder.

Stating the murder is "especially callous," however, is not enough because every murder can be described as a callous disregard for the suffering of another.  See In re Lee, supra, 143 Cal.App.4th 1400, 2006 DJDAR 13961, 13963-13964, cataloging cases to serve as a "yardstick" as to what constitutes "particularly heinous, atrocious or cruel"; see also Rosenkrantz v. Marshall, supra, 444 F.Supp.2d, at 1082-1083).  The only statutory reason to deny Petitioner parole is the "timing and gravity" of the offense (Penal Code § 3041(b)).

- 9 -

This Court has taken this to mean an indeterminately sentenced prisoner is to be granted parole unless the prisoner "is presently too dangerous to grant a fixed parole release date" (In re Dannenberg, supra, 34 Cal.4th, at 1080), the "abiding concern that the Board not schedule the release of any life-maximum prisoner who is still dangerous" (Id., at 1088; see also Sass v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123, 1135, Reinhardt, Circuit Judge, dissenting opinion [evidence must show current threat to public safety). "Thus, Governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society' (§ 2402, subd. (a); accord Pen. Code, § 3041, subd. (b)", (In re Elkins (2006) 144 Cal.App.4th 470, 2006 DJDAR 14489, 14498, c. 1 (DJDAR 11/1/06)). See also Biggs v. Terhune (9th Cir. 2003), 334 F.3d 910; Irons v. Warden of California State Prison-Solano (E.D. Cal. 2005) 358 F.Supp.2d 942; Marshall v. Lansing (3rd Cir. 1988) 839 F.2d 933; U.S. ex rel Farese v. Luther (3rd Cir. 1992) 953 F.2d 52; Dunn v. United States Parole Commission (10th Cir. 1987) 818 F.2d 743; Quaglito v. Sullivan (D.Minn. 1989) 719 F.Supp. 860. The judges in these cases are jurists of reason who have heretofore addressed the question of static factors of the crime having no relevance over time in predicting current dangerousness.

The court in case at bench quoted In re Elkins, supra, 44 Cal.App.4th 475, lifting the quote from the appellate court in, In re Scott, supra, 133 Cal.App.4th, 573, 594-595, fns. omitted:

"The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the

- 10 -

proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being 'Previous Record of Violence'). Reliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair [citation]; and 'runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.' [Citation.] The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. [Citation.] Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny."

Simply, the Governor may not rely upon "unreasonable inferences" to support a decision, and an "inference is not reasonable if it is based only on speculation" (People v. Holt (1997) 15 Cal.4th 619, 669). The Governor's decision, like the lower court's decision, made no rational connection between the commitment offense and Petitioner's <u>current</u> threat to public safety, the offense no longer being reliable evidence reducing the Governor's decision to speculation, violating Petitioner's right to due process.

3. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS AND TO BE FREE FROM DOUBLE JEOPARDY GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE BOARD OF PAROLE HEARINGS ENHANCED PETITIONER'S TERM FOR A FIREARM ENHANCEMENT THAT HE SERVED CONSECUTIVELY TO THE LIFE SENTENCE?

Cal. Code Regs., tit. 15, § 2406, et seq., controls time calculations for enhancement. Cal. Code Regs., tit. 15, § 2406(b) cogently states, "Punishment Imposed by the Court. If the court imposed the consecutive punishment for the enhancement, the board shall not add an additional adjustment for using deadly or dangerous weapon, being armed with a firearm, using a firearm...."

The language is mandatory, "shall" creating a liberty interest (Hicks v. Oklahoma (1980) 447 U.S. 343, 346; Wolff v. McDonnell (1974) 418 U.S. 538. The regulations simply assures protection against

- 11 -

double jeopardy, to not being punished twice for the same behavior. The Board, however, like in case at bench, continuously either willfully and deliberately ignores this law, or is incredibly ignorant of the law, doing violence to the law and Board's own regulations.

Moreover, Petitioner was placed in the wrong category in fixing his term. See writ of habeas corpus, pages 22-23 for time calculation, incorporated herein by reference. "[P]etitioner is entitled to have his term fixed at a number of years appropriate to his individual culpability, measured by circumstances existing at the time of the offense" (In re Rodriguez, supra, 14 Cal.3d, at 652).

## C O N C L U S I O N

WHEREFORE, it is respectfully requested that the Court grant review, or in the alternative, issue an Order to Show Cause returnable to the appellate court to give a reasoned decision why the writ should not be granted, ordering the California Department of Corrections and Rehabilitation to fix Petitioner's term pursuant to his culpability within the legislatively prescribed matrix and thereupon immediately release him on parole, deducting any and all excess custody credits from any period of parole he may serve.

Date: June 6, 2007

Respectfully submitted,

Rizalino Cayabo
Petitioner in pro per

- 12 -

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

COURT OF APPEAL
FIFTH APPELLATE DISTRICT

# Fifth Appellate District

F I L E D

JUN 1  2007

LEISA V. BIGGERS, CLERK/ADMINISTRATOR

By_____

Deputy

| | |
|---|---|
| In re<br>RIZALINO CAYABO,<br><br>On Habeas Corpus. | F052050<br>(Tulare County Sup. Ct. No. 22849) |

BY THE COURT:*

The petition for writ of habeas corpus filed in this court on January 19, 2007, is denied.

_Wise_ _____ Acting Presiding Justice

*Before Wiseman, Acting P.J., Cornell, J. and Kane, J.

PROOF OF SERVICE BY MAIL

CASE NAME:  CAYABO v. SCHWARTZENEGGER

CASE NO. : Fifth Appellate District No.

I, Rizalino Cayabo , hereby declare that I am a party
to the above titled action and am over the age of eighteen (18),
and I did serve a true copy of the following:

PETITION FOR REVIEW

by placing a true copy in an envelope with first class postage fully
prepaid and said envelope surrendered to correctional staff at the
Correctional Training Facility for delivery to the prison mail room
and therefrom delivered to the local United States Post Office the
next business day from which there is postal service between the
place of mailing and the addressee:

Jerry Brown                         California Court of Appeals
Attorney General                    Fifth Appellate District
450 Golden Gate Ave., #11000        2525 Capitol Street
San Francisco, CA 94102             Fresno, CA 93721

I declare under penalty of perjury that the foregoing is true
and correct, doing so this  6  day of  June  , 2007, at
Soledad, California.



# IN THE SUPREME COURT

## STATE OF CALIFORNIA

In the matter of:

RIZALINO CAYABO,

on Petition for Review.

_____/

CASE NO. _____

(Court of Appeal No. FO52050
Fifth Appellate District;
Superior Court No. VHC174532
Tulare County)

TO THE HONORABLE CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT AND

THE ASSOCIATE JUSTICES OF THE COURT:

COMES NOW Rizalino Cayabo (hereafter Petitioner) respectfully

requesting review of the decision of the Court of Appeals, Fifth

Appellate District, filed on January 19, 2007 (ATTACHMENT A).

This case presents the following questions for review:

1. IN LIGHT OF THE UNITED STATES SUPREME COURT DECISION IN
   HAMDI v. RUMSFELD (2004) 542 U.S. 507 HOLDING THE "SOME
   EVIDENCE" STANDARD OF SUPERINTENDENT v. HILL (1985) 472
   U.S. 455 IS A STANDARD OF REVIEW NOT A STANDARD OF
   PROOF IS THE "SOME EVIDENCE" OF PROOF ARTICULATED IN IN
   RE ROSENKRANTZ (2002) 29 CAL.4th 616 CONTRARY TO CLEARLY
   ESTABLISHED UNITED STATES SUPREME COURT LAW?

2. WAS THE GOVERNOR'S DECISION ARBITRARY AND IN VIOLATION
   OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE
   FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
   CONSTITUTION WHEN THE GOVERNOR REVERSED PETITIONER'S
   GRANT OF PAROLE SOLELY ON THE COMMITMENT OFFENSE OVER
   TWO DECADES OLD WHEN THERE IS NOT A SCINTILLA OF
   EVIDENCE THAT HE IS A CURRENT THREAT TO PUBLIC SAFETY?

3. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
   AND TO BE FREE FROM DOUBLE JEOPARDY GUARANTEED BY THE
   FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
   CONSTITUTION WHEN THE BOARD OF PAROLE HEARINGS ENHANCED
   PETITIONER'S TERM FOR A FIREARM ENHANCEMENT THAT HE
   SERVED CONSECUTIVELY TO THE LIFE SENTENCE?

## II

## NECESSITY FOR REVIEW

This Petition for Review should be granted because question one is a case of first impression of statewide importance in which the Court did not have the benefit of the 2004 United States Supreme Court decision when deciding the "some evidence" standard as a standard of proof in In re Rosenkrantz (2002) 29 Cal.4th 616; question two needs to be addressed to bring lower state courts into uniformity in reviewing decisions of unsuitability by the Board of Parole Hearings (hereafter Board) as case at bench is no more egregious than many writs that have been granted by state appellate courts with less passage of time, the lower state court decisions being as arbitrary as the Board's decisions. For parole decisions to be fair and uniform, they must be consistent, applying and weighing the suitability criteria fairly, without personal predilections based on political safety and not public safety. Questions three needs to be answered because the Board consistently applies enhancements to add time to the term when the enhancement has already been served separately.

## III

## JURISDICTION OF THE COURT

This Court has sole jurisdiction to render opinions on questions of statewide interest (Cal. Rules of Court, Rule 29(a)(1)). Moreover, only this Court can overturn one of its own decisions, and the "some evidence" standard is a question this Court should answer.

## IV

## HISTORY OF THE CASE

The facts of the case are found in the writ of habeas corpus, pages 5-10 that is part of the record and incorporated herein by reference. In short.

On October 4, 1984, Petitioner murdered his brother-in-law, Medaro Lozano. After committing the offense, Petitioner drove to a Tulare County Sheriff's Office and turned himself in. After a trial by judge, being found guilty of second degree murder in violation of Penal Code §187 and personal use of a firearm in violation of Penal Code § 12022.5, on July 1, 1985, Petitioner was sentenced to an indeterminate sentence of 15 years to life pursuant to Penal Code § 190, and two years for the use of a firearm, to run consecutive to the 15 years to life.

Petitioner murdered his brother-in-law because he felt his brother-in-law "had betrayed him and violated Filipino custom, by not asking his permission to marry, Cayabo's sister" (see EXHIBIT 1, p. 4, to habeas petition). It had been a year and the brother-in-law had not apologized, but rather rubbed it in Petitioner's face. On the night of the murder, over 22 years ago, Petitioner drove to his friends house, but when he pulled up his brother-in-law was there, so he left. Petitioner drove around for about an hour and had a few drinks of alcohol. Petitioner returned to his friends, exited his car, walked up behind his brother-in-law and shot him in the head.

Under mitigating circumstances in the POR, the Probation Officer concluded, "The crime was committed due to unusual circumstances, which is unlikely to recur" (EXHIBIT 1, p. 5). A psychological evaluation prepared for sentencing by Dr. Jose Icasiano, an expert

- 3 -

in Filipino culture (EXHIBIT 2 to habeas petition) explained how Filipino customs motivated Petitioner.

Petitioner's postconviction record is exemplary, with several psychological evaluations by forensic experts, and evaluations by correctional experts, all agreeing Petitioner is not a current threat to public safety, twenty-two years after the commitment offense and over a half dozen parole hearings, on May 9, 2006, in a twenty page decision detailing its findings, the Board found Petitioner suitable for parole. The decision passed the close scrutiny of the Decision Review Unit, thus two independent bodies found Petitioner is not a current threat to public safety.

On September 28, 2006, the Governor reversed the Board's decision (EXHIBIT 5), doing so on the ground that the offense was especially heinous because his stated motive for the crime -- that he felt angry and betrayed because Mr. Lozano did not ask permission to marry his sister -- is very trivial in relation to the magnitude of the brutal murder he committed." Additionally, "there is also evidence in the record before me that the murder involved some level of premeditation." The Governor also considered the Tulare County District Attorney's statement and the statement of the Tulare County Sheriff's Office, neither of which added any new information or stated why Petitioner is a current threat to public safety.

The lower court decision does nothing to help the Governor's decision in explaining how, twenty-two years after the fact, with no prior history of violence and no postconviction history of violence, the instant offense being an isolated incident of aberrant behavior in Petitioner's life, makes him a current threat to public

- 4 -

safety when Petitioner has surpassed the maximum term for second degree murder and if had been convicted of first degree murder has surpassed the minimum eligible parole release date for first degree murder over 5 years ago, the lower court decision being unreasonable in light of the facts. In fact, the lower court relied on In re Elkins (2006) 44 Cal.App.4th 475 to deny the writ. In Elkins, the court explained, although parole may be denied on the offense alone, over time the offense loses all value of predictability, thus coming to a different conclusion than the court in case at bench; the court doing nothing more than regurgitating the Governor's ip so facto rationale, making absolutely no nexus between the commitment offense and current threat to public safety.

## V

## ARGUMENTS

1. IN LIGHT OF THE UNITED STATES SUPREME COURT DECISION IN HAMDI v. RUMSFELD (2004) 542 U.S. 507 HOLDING THE "SOME EVIDENCE" STANDARD OF SUPERINTENDENT v. HILL (1985) 472 U.S. 455 IS A STANDARD OF REVIEW NOT A STANDARD OF PROOF IS THE "SOME EVIDENCE" OF PROOF ARTICULATED IN IN RE ROSENKRANTZ (2002) 29 CAL.4th 616 CONTRARY TO CLEARLY ESTABLISHED UNITED STATES SUPREME COURT LAW?

In 2002 this Court, citing In re Powell (1988) 45 Cal.3d 894, 904, which relied on Superintendent v. Hill (hereafter Hill), supra, 472 U.S. 445, held in In re Rosenkrantz, supra, 29 Cal.4th 616, at 656 that due process requires that the Governor's decision to reverse a finding of suitability by the Board need be supported only by "some evidence." The "some evidence" standard being the standard of proof. Petitioner asks, logically, if the standard of proof is "some evidence," and the standard of review is "some evidence," how then

does the "some evidence" standard apply itself?

Hill, supra, was ambiguous as to when the "some evidence"
standard applied, at the administrative decision level, or upon
judicial review? That ambiguity was clarified in the recent decision
of Hamdi v. Rumsfeld, supra, 542 U.S. 507, 124 S.Ct. 2633, at 2651,
the High Court holding that the "'[some evidence]' standard therefore
ill suited to the situation in which a habeas petitioner has received
no prior proceedings before any tribunal and had no prior opportunity
to rebut the Executive's factual assertions before a neutral
decisionmaker." The Governor is not a "neutral decisionmaker."
That was recognized by the dissenters in Dannenberg, opining, the
Governor has "little to gain and potentially much to lose by granting
parole, and accordingly, the incentive to give only pro forma
consideration to parole decisions is strong" (In re Dannenberg (2005)
34 Cal.4th 1061, 1105; see also In re Scott II (2005) 133 Cal.App.4th
573, 594 fn. 7 ["it appears that gubernatorial reversals of Board
decisions granting parole are most often based solely or primarily
on the gravity of the inmate's offense"]).

The standard of proof is "a preponderance of the evidence"
(California Code of Regulations, Title 15 (hereafter Cal. Code Regs.,
tit. 15) § 2000(b)(50)). The standard of review, that is assuming
the standard of proof was correctly applied, is then "some evidence"
(Hamdi v. Rumsfeld, supra, 124 S.Ct., at 2651).

Any evidence, however, that lacks any real probative value cannot
constitute "some evidence." Recently opined in In re Lee (2006)
143 Cal.App.4th 1400, 2006 DJDAR 13961, 13963, c.1 (DJDAR 10/19/06):

"The test is not whether some evidence supports the reasons the Governor cites
for denying parole, but whether some evidence indicates a parolee's release

- 6 -

<u>unreasonably endangers public safety.</u> (Cal. Code Regs. tit. 15, § 2402, subd. (a) [parole denied if prisoner 'will pose an unreasonable risk or danger to society if released from prison'], see e.g. <u>In re Scott</u> (2005) 133 Cal.App.4th 573, 595 ['The commitment offense can negate suitability [for parole] only if circumstances of the crime...rationally indicate that the offender will present an unreasonable public safety risk if released from prison'], but see <u>In re Lowe</u> (2005) 130 Cal.App.4th 1405 [suggested 'some evidence' applies to the factors, not dangerousness].) Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." (Emphasis in original.)

Moreover, it is simply irrational and decimates the law and any sense of fair play once a defendant is acquitted of first degree murder, which requires a finding beyond a reasonable doubt, for the Executive to be able to recharacterize the offense and find "premedication" on a mere modicum of evidence, the evidence being no more than "Because I say so," violating <u>Blakely v. Washington</u> (2004) 542 U.S. ___, 124 S.Ct. 2531; <u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466 [elements of offense must be found by a jury beyond a reasonable doubt]. Petitioner was tried before a competent judge acquitting him of first degree murder. The Governor cannot now, because he did not agree with the outcome, find elements of first degree murder to deny Petitioner parole.

Whether by "a preponderance of the evidence" or "some evidence," the Governor's decision was arbitrary, being unsupported by any evidence Petitioner is a <u>current</u> threat to public safety.

2.  WAS THE GOVERNOR'S DECISION ARBITRARY AND IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE GOVERNOR REVERSED PETITIONER'S GRANT OF PAROLE SOLELY ON THE COMMITMENT OFFENSE OVER TWO DECADES OLD WHEN THERE IS NOT A SCINTILLA OF EVIDENCE THAT HE IS A <u>CURRENT</u> THREAT TO PUBLIC SAFETY?

While it is true the commitment offense must be <u>initially</u> considered and weighed by the Board/Governor, it is just as true

- 7 -

that the offense is not to be viewed in a vacuum as though it occurred only yesterday, but is to be placed into perspective relative to time, "entailing primarily what a man is and what he may become rather than simply what he has done" (Greenholtz v. Inmates of Nebraska Correctional and Penal Complex (1979) 442 U.S. 1, 10). And, although the commitment offense is a consideration in any particular case, "[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release (Id., at 15; In re Minnis (1972) 7 Cal.3d 639, 645 [in prison conduct and potential for rehabilitation are of "paramount importance"). Thus, "[p]arole decisions are based in large measure on occurrences subsequent to the commission of the offense" (In re Rodriguez (1975) 14 Cal.3d 639, 652). As it was observed in In re Andrade (2006) 141 Cal.App.4th 807, 823, Pollak J., dissenting, "This record, like that in numerous recent cases, strongly suggests that California parole authorities are losing sight of that fact."

One appellate court put it thusly: "The state now places greater importance on punishment as the purpose of imprisonment. (Pen. Code, § 1170, subd. (a)(1))" (In re Morrall (2002) 102 Cal.App.4th 280, 292). The court continued, "With respect to person sentenced to indeterminate terms, the purpose of punishment is satisfied by requirement of service of a minimum period before eligibility for parole and, when suitable for parole, by the determination a release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public" (Id.; see also Sanchez v. Kane (C.D. Cal. 2006) 444 F.Supp.2d

1049, 1062-1063 ["if the Governor's decision to deny parole based
on the nature of the offense is permitted to stand, contrary to the
parole statutes which logically measures parole eligibility on the
reformation of the prisoner after a prescribed period of punishment,
parole eligibility is an impossibility, not a possibility. The parole
statutes do not vest the Governor with the power to resentence
petitioner"]).

Assuming, however, the Governor can retry the case and make
an independent finding of "premeditation," the question now becomes
is the offense "particularly egregious" for a first degree murder?
It is one matter if the murder "was particularly egregious for a
second degree murder, it is another matter whether any evidence would
support the same conclusion for a first degree murder" (In re
Rosenkrantz, supra, 29 Cal.4th, at 679, concurring, Moreno, J.).
If Petitioner had been convicted of first degree murder he would
have been eligible for parole   six years ago. As it stands, with
conduct credits (Penal Code § 190; Cal. Code Regs., tit. 15, § 2410),
he has the equivalent of 28 years invested in his sentence, the mid-
range for first degree murder.

Stating the murder is "especially callous," however, is not
enough because every murder can be described as a callous disregard
for the suffering of another. See In re Lee, supra, 143 Cal.App.4th
1400, 2006 DJDAR 13961, 13963-13964, cataloging cases to serve as
a "yardstick" as to what constitutes "particularly heinous, atrocious
or cruel"; see also Rosenkrantz v. Marshall, supra, 444 F.Supp.2d,
at 1082-1083). The only statutory reason to deny Petitioner parole
is the "timing and gravity" of the offense (Penal Code § 3041(b)).

- 9 -

This Court has taken this to mean an indeterminately sentenced prisoner is to be granted parole unless the prisoner "is presently too dangerous to grant a fixed parole release date" (In re Dannenberg, supra, 34 Cal.4th, at 1080), the "abiding concern that the Board not schedule the release of any life-maximum prisoner who is still dangerous" (Id., at 1088; see also Sass v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123, 1135, Reinhardt, Circuit Judge, dissenting opinion [evidence must show current threat to public safety). "Thus, Governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society' (§ 2402, subd. (a); accord Pen. Code, § 3041, subd. (b)", (In re Elkins (2006) 144 Cal.App.4th 470, 2006 DJDAR 14489, 14498, c. 1 (DJDAR 11/1/06)). See also Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910; Irons v. Warden of California State Prison-Solano (E.D. Cal. 2005) 358 F.Supp.2d 942; Marshall v. Lansing (3rd Cir. 1988) 839 F.2d 933; U.S. ex rel Fanese v. Luther (3rd Cir. 1992) 953 F.2d 52; Dunn v. United States Parole Commission (10th Cir. 1987) 818 F.2d 743; Quaglito v. Sullivan (D.Minn. 1989) 719 F.Supp. 860. The judges in these cases are jurists of reason who have heretofore addressed the question of static factors of the crime having no relevance over time in predicting current dangerousness.

The court in case at bench quoted In re Elkins, supra, 44 Cal.App.4th 475, lifting the quote from the appellate court in In re Scott, supra, 133 Cal.App.4th 573, 594-595, fns. omitted:

"The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the

proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being 'Previous Record of Violence'). Reliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair [citation]; and 'runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.' [Citation.] The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. [Citation.] Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny."

Simply, the Governor may not rely upon "unreasonable inferences" to support a decision, and an "inference is not reasonable if it is based only on speculation" (People v. Holt (1997) 15 Cal.4th 619, 669). The Governor's decision, like the lower court's decision, made no rational connection between the commitment offense and Petitioner's current threat to public safety, the offense no longer being reliable evidence reducing the Governor's decision to speculation, violating Petitioner's right to due process.

3. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS AND TO BE FREE FROM DOUBLE JEOPARDY GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE BOARD OF PAROLE HEARINGS ENHANCED PETITIONER'S TERM FOR A FIREARM ENHANCEMENT THAT HE SERVED CONSECUTIVELY TO THE LIFE SENTENCE?

Cal. Code Regs., tit. 15, § 2406, et seq., controls time calculations for enhancement. Cal. Code Regs., tit. 15, § 2406(b) cogently states, "Punishment Imposed by the Court. If the court imposed the consecutive punishment for the enhancement, the board shall not add an additional adjustment for using  deadly or dangerous weapon, being armed with a firearm, using a firearm...."

The language is mandatory, "shall" creating a liberty interest (Hicks v. Oklahoma (1980) 447 U.S. 343, 346; Wolff v. McDonnell (1974) 418 U.S. 538. The regulations simply assures protection against

- 11 -

double jeopardy to not being punished twice for the same behavior. The Board, however, like in case at bench, continuously either willfully and deliberately ignores this law, or is incredibly ignorant of the law, doing violence to the law and Board's own regulations.

Moreover, Petitioner was placed in the wrong category in fixing his term. See writ of habeas corpus, pages 22-23 for time calculation, incorporated herein by reference. "[P]etitioner is entitled to have his term fixed at a number of years appropriate to his individual culpability, measured by circumstances existing at the time of the offense" (In re Rodriguez, supra, 14 Cal.3d, at 652).

## C O N C L U S I O N

WHEREFORE, it is respectfully requested that the Court grant review, or in the alternative, issue an Order to Show Cause returnable to the appellate court to give a reasoned decision why the writ should not be granted, ordering the California Department of Corrections and Rehabilitation to fix Petitioner's term pursuant to his culpability within the legislatively prescribed matrix and thereupon immediately release him on parole, deducting any and all excess custody credits from any period of parole he may serve.

Date: June 6, 2007

Respectfully submitted,

Rizalino Cayabo
Petitioner in pro per

- 12 -

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

# Fifth Appellate District

COURT OF APPEAL
FIFTH APPELLATE DISTRICT

FILED

JUN 1  2007

LEISA V. BIGGERS, CLERK/ADMINISTRATOR
By_____
                                    Deputy

| | |
|---|---|
| In re<br>RIZALINO CAYABO,<br><br>     On Habeas Corpus. | F052050<br>(Tulare County Sup. Ct. No. 22849) |

BY THE COURT:*

    The petition for writ of habeas corpus filed in this court on January 19, 2007, is denied.


_____ Acting Presiding Justice


*Before Wiseman, Acting P.J., Cornell, J. and Kane, J.

PROOF OF SERVICE BY MAIL

CASE NAME:  CAYABO v. SCHWARTZENEGGER

CASE NO. : Fifth Appellate District No.

I, Rizalino Cayabo , hereby declare that I am a party to the above titled action and am over the age of eighteen (18), and I did serve a true copy of the following:

PETITION FOR REVIEW

by placing a true copy in an envelope with first class postage fully prepaid and said envelope surrendered to correctional staff at the Correctional Training Facility for delivery to the prison mail room and therefrom delivered to the local United States Post Office the next business day from which there is postal service between the place of mailing and the addressee:

Jerry Brown
Attorney General
450 Golden Gate Ave., #11000
San Francisco, CA 94102

California Court of Appeals
Fifth Appellate District
2525 Capitol Street
Fresno, CA 93721

I declare under penalty of perjury that the foregoing is true and correct, doing so this __6__ day of __June__ , 2007, at Soledad, California.